## Case No. 4,117.

### In re DUERSON.

[13 N. B. R. 183.][1]

#### District Court, D. Kentucky. 1876.

CONSTITUTIONALITY OF BANKRUPT LAW—UNIFORMITY — ADOPTION OF STATE EXEMPTION LAWS—EXEMPTIONS.

1. A bankrupt law which is not uniform is void. No law can be uniform which prescribes rules for one state different from those prescribed for another.

2. Congress in adopting the exemption laws of a state as part of the bankrupt law [of 1867 (14 Stat. 517)] cannot dispense with any of the limitations imposed by that law.

3. Under the laws of Kentucky an exemption of land cannot be allowed as against debts contracted before its acquisition.

4. The right of exemption must exist, if at all, at the date of the commencement of proceedings in bankruptcy.

5. Under the laws of Kentucky, a bankrupt is not entitled to an exemption of an undivided interest in land on which there are no improvements, appurtenances, or dwelling houses, although he has expressed an intention to make it a homestead.

On certificate of register in bankruptcy.

By Wilbur F. Browder, Register:

Thomas Duerson, a citizen of Todd county, Kentucky, died intestate November 26, 1873, leaving certain real and personal property which descended to his seven adult children

[1] [Reprinted by permission.]

and heirs-at-law, of whom George T. Duerson, the bankrupt, was one. On the 27th day of December, 1873, the heirs-at-law met upon the premises in Todd county, and agreed upon a parol division of the real estate among themselves. No deeds of partition were made; a mere verbal agreement was entered into, whereby each of the parties in interest was to receive certain particular portions of the three hundred and four acres of land which had constituted the farm of their deceased ancestor. On the 27th day of January, 1874, this inchoate division was formally confirmed and perfected by the execution of proper deeds of partition by and to all the parties concerned, and by these conveyances eighty-eight acres of unimproved land were allotted to the bankrupt and his feeble-minded brother, Isaac Duerson, for whom the bankrupt was then and is now acting as a quasi committee. The conveyance was to them jointly, but it was verbally understood at the time that the western moiety of the land was the special property of the bankrupt, while the eastern half should belong to Isaac. The deed under which these parties held contained no such stipulation, the grant being to the two jointly, without any limitations as to the terms of any future settlement between the bankrupt and his brother. At the time of the ancestor's death —November 27, 1873—the bankrupt was a bona fide housekeeper, with a family, near Whippoorwill, in Logan county, Kentucky. On the 12th day of January, 1874, he proceeded to Todd county, rented a dwelling within reach of his newly acquired possession, and began to make rails with which to inclose the land. Pending these operations, his family remained in Logan county, and did not remove to the rented place, in the vicinity of the land, until March, 1874. It is in evidence that the bankrupt stated and declared at the time of the parol division of the land—December 27, 1873—that he intended to improve and occupy his quota of the land as a home for himself and family, but that he could not remove to the place until the fall of 1874. The tract of eighty-eight acres was wholly unimproved. There was no dwelling, no house or structure of any kind upon any portion of it at the date of final settlement between the heirs, on the 27th day of January, 1874. The tract was merely a severed section of the original farm of the intestate. Duerson filed his voluntary petition in bankruptcy in this court on the 23d day of January, 1874, and was thereupon duly adjudged a bankrupt. Charles S. Grubbs was appointed assignee of said estate, and received from the proper officer the usual assignment of the bankrupt's effects, by which conveyance the assignee became the owner of "all the estate, real and personal, of the said George T. Duerson, bankrupt, including all the property of whatsoever kind, of which he was possessed, or in which he was interested, or was entitled to have on the 23d day

of January, A. D. 1874." In due time thereafter, the assignee filed his report of exempted property, in which he declined and refused to set apart and designate any portion of the eighty-eight acres of land aforesaid as a homestead for the bankrupt and his family; whereupon the bankrupt appeared by his counsel and filed exceptions to the report, and prayed for a correction thereof, for the allotment of a homestead in said land, and for all proper relief. The debts proved against the estate of the bankrupt aggregate two thousand and ninety-three dollars and twenty-one cents, all of which, except one hundred and seventy-five dollars, were created prior to June 1, 1866, and all, without exception, were contracted before the acquisition of the land now claimed as exempt. The act of the Kentucky legislature, approved February 10, 1866, commonly called the "Homestead Act," provides as follows: "In addition to the personal property exempted from execution by this chapter, there shall, on all liabilities created or incurred after June 1, 1866, be exempt from sale under execution, attachment, or judgment of any court (except to foreclose a mortgage given by the owner of a homestead or for purchasemoney due therefor), so much land, including the dwelling-house and appurtenances, owned by the debtor, as shall not exceed in value one thousand dollars." Gen. St. 433. And further, "All exemptions provided for in this chapter shall apply to all persons, of any race or color, who are bona fide housekeepers of this commonwealth, but shall not apply to sales under execution attachment, or judgment at the suit of creditors, if the debt or liability existed prior to the purchase of the land or the erection of the improvements thereon."

It is claimed by counsel for the bankrupt that the amendment of March 3, 1873 [17 Stat. 577], now incorporated upon and constituting part of section 5045, Rev. St. U. S., suspended the operation of the foregoing statutes, in so far as the provisions thereof are in conflict with the law of congress, and that, under the present bankruptcy system, as amended March 3, 1873, none of the conditions prescribed by the local state law can be exacted of the bankrupt in order to entitle him to the benefits accruing under such state law; that the exemptions allowed by the several states as existing in 1871, must stand, while the conditions upon which those exemptions are guaranteed to the citizen are abolished and taken away by the superior power of congressional enactment; that it is wholly immaterial in this case whether the debts proved were created before June 1, 1866, or thereafter; that it is immaterial whether the debts were existing prior to the purchase of the land or the erection of the improvements.

The amendment of March 3, 1873, provides that all exemptions allowed by the constitution and laws of the several states as existing in the year 1871, shall be allowed and protected by the courts of bankruptcy, and that such exemptions shall be valid against debts contracted before the passage and adoption of such state constitution and laws, as well as those contracted after the same. In this case the exemption of a homestead was expressly allowed by the statute law of Kentucky, provided the debts against which the exemption is claimed were contracted after June 1, 1866, or were contracted after the purchase of the land or the erection of the improvements thereon. The absence of any one of these conditions is sufficient to defeat the exemption, considered with reference to the state statute alone. Congress evidently intended, by the amendatory act of March 3, 1873, to abrogate and destroy the conditions annexed to the exemption privileges by the state legislatures, and to administer the local laws, shorn of these conditions. Is the amendment constitutional? Has congress the power to do what is attempted in the amendment of March 3, 1873? Congress has power to establish uniform laws on the subject of bankruptcies throughout the United States. Const. art. 1, § 8. Uniformity is the essence of any bankruptcy law enacted by congress; and any law adopted by the federal legislature on this subject, which is not uniform in all its operations and results throughout all the states, is ultra vires, is inhibited by the organic law, and is necessarily void. No law can be uniform which prescribes rules for one state different from those prescribed for another. It seems that under the constitution, congress, in establishing a uniform system of bankruptcy throughout the United States, has the authority either to suspend all the exemption laws of the several states, and in lieu thereof to substitute one general law upon the subject of exemptions, applicable alike to all the states, or else to incorporate upon the body of the bankruptcy system the local laws of the states, as they exist, and cause them to be administered and enforced as parts of the general system. In the latter case the operation of the bankruptcy law is uniform in all its results. It changes no subsisting remedy, abridges no subsisting right, but operates alike upon all. Though some of the district judges have held that the amendment of March 3, 1873, is constitutional, I am thoroughly convinced that such a conclusion is not sustained by reason or authority. Chief Justice Waite, in Re Deckert [Case No. 3,728], expressly decided that the act was unconstitutional. He says: "The act of 1873 excepts from the operation of the assignment not only such property as was actually exempted by virtue of the exemption laws, but more. It does not provide that the exemption laws as they exist shall be operative and have effect under the bankruptcy law, but that in each state the property specified in such laws, whether actually exempted by virtue thereof or not, shall be excepted. It in effect declares by its own enactment, without regard to the

laws of the states, that there shall be one amount or description of exemption in Virginia and another in Pennsylvania. In this we think it is unconstitutional, and therefore void. It changes existing rights between the debtor and creditor. Such changes to be warranted by the constitution must be uniform in their operation. This is not." In Re Dillard [Id. 3,912] the amendment was also held unconstitutional, null, and void. It is very evident, therefore, that inasmuch as the debts of Duerson, except to the extent of one hundred and seventy-five dollars, were all created before June 1, 1866, there can be no homestead allotted as against these debts. It is in proof that one hundred and seventy-five dollars of the indebtedness was contracted after June 1, 1866, but before the acquisition of the land now claimed as exempt. The statute disallows the exemption of a homestead against debts contracted before the "purchase" of the land or the erection of the improvements thereon. I think the word "purchase," as used in the context, is synonymous with the word "acquisition." In this case the land was not "purchased," but acquired by descent. At any rate, this debt of one hundred and seventy-five dollars was created "before the erection of the improvements" on the land, and this fact of itself is fatal to the claim.

If the preceding views are untenable and unsustained by authority, there is still another, and to my mind, more satisfactory reason why the bankrupt is not entitled to the relief sought. Does the record show that Duerson ever owned a homestead? The land in controversy was never occupied by him. There was no semblance of a home upon it. He owned no specified portion of the land. His highest right therein was an undivided interest. In Schedule B (1), accompanying the petition, the bankrupt describes his "interest in lands" in the following words: "Petitioner owns forty-four acres of land in Todd county, Kentucky. Petitioner is now improving same with a present and actual intention of making same a homestead for himself and family." This declaration was made January 23, 1874, the day on which the petition was prepared and filed. The substance of this declaration was made December 27, 1873, at the time of the verbal division of the land. Duerson had no conveyance to his land until January 27, 1874. Before and up to that date he had an undivided interest of one-seventh in and to three hundred and four acres of land. The verbal parceling out among themselves by the heirs was nugatory, binding on no one, until solemnly ratified by deeds on the 27th day of January, 1874. "No estate of inheritance, or freehold, or for a term of more than one year, shall be conveyed, except by deed or will." Gen. St. Ky. Four days after the commencement of proceedings in bankruptcy by the debtor, four days after the title to all of Duerson's property had fully vested in the assignee, deeds of partition were made. At

that time Duerson had no right to convey. His assignee had, four days before that time, succeeded to all his rights in and to said estate. By operation of law, the title to Duerson's property vested in the assignee as of date January 23, 1874, the day on which the proceedings commenced. All participation by Duerson in the subsequent division of the three hundred and four acres of land was wholly unauthorized, and his acts could in no wise affect the rights of the assignee. The assignee had a direct, well-defined, tangible interest in the land, which the bankrupt could not jeopardize or prejudice.

The right of exemption, ex rei necessitate, exists, if at all, at the date of the commencement of the proceedings in bankruptcy. In this case Duerson owned no land in specie. His estate was without that "local habitation and a name" so imperatively demanded by the statute, and this defect cannot be cured by the mere declaration of an intention. Doubtless the intention was expressed. It is part of the original record in the case. It was followed up, after the adjudication of bankruptcy, by acts, the tendency of which was to show the good faith and honesty of the intention. A log cabin was erected on the forty-four acres specially claimed by Duerson, and he states that he ceased building for the reason that the property was in litigation. The Kentucky court of appeals, in the case of Brown v. Martin, 4 Bush. 47, decided that "the right of exemption of a homestead, under the act of February 10, 1866 [Laws Ky. 31], depends upon the actual purpose and intention of the debtor to use and enjoy the property sought to be exempted as a home for himself and family, and that this right does not exist where the residence of the debtor is located elsewhere." In that case the defendant in the execution owned an undivided interest of one-fourth in and to a house and lot in Louisville, though he resided elsewhere, and while the court decided that if he had actually resided on the premises at the date of the levy of the execution, his undivided interest would have been exempted, it certainly does not decide that the statute exempts homesteads for the use of families, whose head owns as joint tenant, with others, real estate on which there are no improvements, no appurtenances, no dwelling-house. Unquestionably the bona fide intention of the debtor is of considerable value in ascertaining and settling this right, under certain circumstances, but such intention must, in order to be effectual, be followed up by something more tangible and satisfactory than its bare utterance. Temporary abandonment of property once occupied and owned as a homestead, with the continuous bona fide intention and purpose to return and reoccupy the place as formerly, will not defeat the right of exemption. But where there has never been a vested right, no mere declaration of purpose, however honest, can create it. The

statute unquestionably contemplates an actual residence. Only such land as will include the "dwelling-house and appurtenances" can be laid off to the debtor. Debts existing before the "erection of the improvements" on the land, no matter how long the debtor may have owned the land, are expressly protected, and unless there be "improvements" on the land, such debts, when transformed into the shape of executions, shall be satisfied out of the proceeds of the sale of such land. In the matter of D. B. Thompson, the district court of this district, in January, 1875, decided that "the statute exempts so much land, including the dwelling-house and appurtenances, owned by the debtor, as shall not exceed in value one thousand dollars. The object of the statute is to exempt homesteads. There is no exemption unless the debtor dwell on the land sought to be exempted, and there can be no exemption which does not include the dwelling-house. The land exempted must be one connected body, and must have on it the dwelling-house of the debtor. * * * There can be no exemption unless the debtor owns a dwelling-house, which he can claim as exempt." [Case not reported.]

In the case under consideration Duerson owned no dwelling-house; he did not reside on the land; he had never at any time resided on it; there was no dwelling-house upon it; he owned no definite, fixed situs; his property was an incorporeal interest; he had never abandoned the premises with the intention to return and occupy it as a home; his residence at the date of the commencement of the proceedings in bankruptcy was located in the adjoining county; all of his debts, except one hundred and seventy-five dollars, were created before June 1, 1866; all of them were existing prior to the "purchase" (acquisition) of the land, and before the erection of the improvements thereon; his intentions are wholly unaccompanied by those antecedent facts and circumstances, without which such declarations are worthless, and none of the terms and conditions prescribed by the statute have been complied with by the complainant in this proceeding. The exceptions of the bankrupt to the assignee's report of exempted property are overruled.

Thomas H. Hines, for bankrupt.
James H. Bowden, contra.

BALLARD, District Judge. I concur with the register, and this opinion is in entire accordance with what has been heretofore repeatedly decided by me. If that is a uniform bankruptcy law, which adopts the exemption laws of the several states just as they exist, though those laws as they exist are variant, I cannot see how it can be successfully maintained that it is any the less uniform when it gives a uniform effect to the state laws, though different from each other

in their own inherent form. As the effect given by the bankruptcy law to the state exemption laws is the same in all of the states, the law is in my opinion uniform in the sense of the constitution. Situated as I am I have not had opportunity to examine the authorities referred to by counsel, or the statute which they interpret; but I am entirely satisfied that under the true construction of the Kentucky statute, and that which has been given it by the court of appeals, the bankrupt is not entitled to a homestead exemption. I do not hold that to entitle a debtor to a homestead exemption he must actually reside on the land in which he claims a homestead at the time of the issual of an execution against him, but I do hold that he must have a dwelling, a home there, which, if he has ever occupied, he has not abandoned, but to which he has a present purpose to return, or to which, if he has never occupied it, he is proceeding with the intention of occupying. But a homestead cannot, any more than a domicile, be acquired by a mere naked intention. The present purpose to erect at a future time a dwelling-house on land, and to occupy it as a home, is not sufficient to constitute a homestead in it. There must be a dwelling-house on it, which is occupied, or which has been occupied, and which has not been abandoned, or to which at least the debtor, if he has never occupied it, looks as his home. At the time Duerson filed his petition in bankruptcy there was no dwelling-house on the land in which he claims a homestead exemption. He doubtless had a purpose to erect a house on it, and to occupy it at some future time, but it was not then his home. His dwelling and home were then elsewhere. The exceptions by the bankrupt to the action of the assignee are overruled. The clerk will forward a copy of this opinion to the register.